

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| OVIE DOBBINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:14-CV-055-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant | § | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ovie Wayne Dobbins ("Dobbins") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied his application for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be affirmed.

## I. BACKGROUND

Dobbins claims that he became disabled on December 28, 2007, due to diverticulitis, depression, anxiety, and prostate problems. (Tr. 265). Dobbins filed an application for DIB and SSI on July 6, 2010. (Tr. 243). Dobbins's application was initially denied on December 7, 2010, and on reconsideration on February 8, 2011. (Tr. 134, 136). Subsequently, Dobbins requested and received a hearing before Administrative Law Judge William Helsper ("ALJ") on January

1

20, 2012. (Tr. 114). On February 9, 2012, the ALJ issued an unfavorable decision finding that Dobbins was not disabled and was capable of performing his past relevant work. (Tr. 95-108).

The ALJ followed the sequential five-step analysis to arrive at this decision.[1] First, the ALJ determined that Dobbins had not engaged in substantial gainful activity since the date of his alleged onset of disability, December 28, 2007. (Tr. 106). Next, the ALJ determined that Dobbins suffered from the following severe impairments: chronic abdominal pains of unknown etiology with GE reflux, mild hypertension, a history of prostatism, mood disorder, and generalized anxiety disorder. (Tr. 106). Third, the ALJ surmised that Dobbins's severe impairments did not equal the severity of the impairments in the listings.[2] (Tr. 108). Next, the ALJ determined that Dobbins had the residual functional capacity ("RFC") to perform the full range of sedentary work activity only limited by his need to be free from production line stress. (Tr. 107). Next, the ALJ concluded that Dobbins could not return to his past relevant work as a welder or welding foreman. (Tr. 107). Alternatively, the ALJ found Dobbins capable of performing other jobs that exist in significant numbers in the national economy. (Tr. 107). Finally, the ALJ determined that Dobbins was not disabled within the meaning of the Social Security Act. (Tr. 107).

The Appeals Council denied review on March 11, 2013. (Tr. 86). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[2] *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

## II. LEGAL STANDARD

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716,

718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### III. ANALYSIS

Dobbins raises three issues on appeal: (1) whether the ALJ properly weighed the medical opinion of Dobbins's treating physician, (2) whether the Appeals Council properly considered Dobbins's request for review, and (3) whether substantial evidence supports the ALJ's RFC assessment. (Doc. 22, p. 4).

**A. The ALJ properly weighed the medical opinion of Dobbins's treating physician.**

In considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination on the claimant), or non-examining sources (a physician who reviews only the claimant's paper record). *See generally* 20 C.F.R. §§ 404.1502, 416.902. Courts in this circuit "have long held that ordinarily the opinions, diagnoses, and

medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Even "[t]he treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status." *Greenspan*, 38 F.3d at 237; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

When good cause is shown, an ALJ may assign little weight or even no weight to a treating source opinion. *Greenspan*, 38 F.3d at 237. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. The regulations list factors which "an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to controlling weight." *Id.* The analysis should include: (1) the physician's length of treatment of the claimant, (2) the nature and extent of the treatment relationship, (3) the support of the physician's opinion afforded by the medical evidence of record, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the treating physician, and (6) other factors. 20 C.F.R. § 404.1527(c)(2).

Even so, courts in the Northern District of Texas have held that "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The ALJ need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3

(N.D. Tex. April 23, 2010) (emphasis added).[3] Furthermore, following *Newton*, the Fifth Circuit explicitly clarified that the holding in that case applied only to the limited situation where "the ALJ rejects the sole relevant treating or examining medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Consequently, when the record contains competing opinions among examining physicians, the ALJ is not required to analyze the criteria set forth in 20 C.F.R. § 404.1527(c)(2) before declining to give great weight to a treating physician's opinion. *Id.* at 467; *Lopez v. Astrue*, 854 F. Supp. 2d 415, 423 (N.D. Tex. 2012); *Nicaragua v. Colvin*, No. 3:12-CV-2109-G BN, 2013 WL 4647698, at *4 (N.D. Tex. Aug. 29, 2013). The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Also, the ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56.

In this case, Dobbins argues that the ALJ improperly discredited the medical opinion of his treating physician, Dr. John Garner. (Doc. 22, p. 12-19). The Commissioner responds that the ALJ properly rejected Dr. Garner's "Crohn's, Colitis, Gastritis and/or Irritable Bowel Syndrome Questionnaire" because it was conclusory and not supported by the objective medical evidence. (Doc. 23, p. 12). In it, Dr. Garner opines that Dobbins is incapable of performing even low stress jobs. (Tr. 649). Alternatively, the Commissioner argues that the record contains competing, first-hand evidence in the form of another examining physician whose medical findings contradict Dr. Garner's opinion. (Doc. 23, p. 11-13).

---

[3] *See also Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008).

First, treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or even special significance. 20 C.F.R. § 404.1527(d). In fact, ALJ's do not err by failing to credit the ultimate conclusions of treating physicians finding that claimants are "totally disabled" or "unable to perform any job at this point." *Tucker v. Astrue*, 337 F. App'x 392, 396 (5th Cir. 2009) (unpublished). "[C]onclusory statements such as those made by [Dr. Garner] are 'not medical opinions as described in paragraph (a)(2) of [20 C.F.R. § 404.1527], but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case . . . .'" *Id.* at 396-97. Therefore, the ALJ properly rejected Dr. Garner's opinion on the ultimate issue of Dobbins's disability.

Assuming that the ALJ rejected more than Dr. Garner's ultimate opinion on disability, he would then be required to assess the § 404.1527(c)(2) factors in his dismissal of the treating physician's opinion or rely on medical records from another examining physician. *See Newton*, 209 F.3d at 456; *Qualls*, 339 F. App'x at 467. After reviewing the ALJ's decision, the Court is satisfied that the ALJ properly cited and relied on the medical records of at least two other examining physicians and was not required to assess the § 404.1527(c)(2) factors. *See Qualls*, 339 F. App'x at 467.

In this case, Dobbins exclusively cites Dr. Garner's impairment questionnaire for the proposition that Dobbins has extensive physical impairments that would preclude him from performing even "low stress" jobs. (Doc. 22, p. 12-13). Dr. Garner added that Dobbins suffers from depression and anxiety. (Tr. 649). It is notable that Dobbins fails to cite any of Dr. Garner's objective medical records to support his position. The Commissioner, on the other hand, cites Dr. Tom Byrd's examination records[4] from October 21, 2010, which indicates that Dobbins had no cardiovascular or respiratory abnormalities or deficits, that his abdomen was soft, with active

---

[4] The ALJ also cites Dr. Byrd's treatment records, but he mistakenly refers to Dr. Byrd as Dr. Boyd. (Tr. 101-102).

bowel sounds and without rebound or organomegaly.[5] (Tr. 429-430). Dr. Byrd also found Dobbins's deep tendon reflexes to be brisk but symmetrical and his bilateral grip strength was equal. (Tr. 430). Also included in Dr. Byrd's records is a radiology report from Dr. Stan Wright that indicates that Dobbins's lumbar spine is normal. (Tr. 431). These objective medical findings are contradictory to Dr. Garner's questionnaire assessment.

Additionally, the ALJ noted that Dr. Yogeshkumar Patel, a gastroenterologist, examined Dobbins on April 11, 2011, and found that he was not in acute distress, his vital signs were stable, and that his abdomen had nonspecific tenderness but was otherwise normal. (Tr. 102, 603). The ALJ documented that Dr. Patel ordered an esophagogastroduodenoscopy ("EGD"), a colonoscopy, an abdominal ultrasound, and a CT scan. The ALJ remarked that the EGD was normal and that the colonoscopy revealed a polyp and hemorrhoids but was otherwise normal. (Tr. 102). Finally, the ALJ included that the biopsies confirmed GE reflux, but that they were also negative. (Tr. 102). Again, Dr. Garner's opinion is not consistent with the findings in Dr. Patel's objective medical records.

Lastly, the Commissioner recalls that Dr. Pennissi Taylor, a licensed psychologist, determined on October 12, 2010, that Dobbins was oriented to person, place, time and situation. Further, Dr. Taylor found Dobbins's speech to be within normal limits, with normal thought process and content and appropriate affect. Dr. Taylor did find that Dobbins's short-term memory was impaired, but that his immediate memory was intact. Dr. Taylor opined that Dobbins's attention and concentration were good, but that his judgment was fair to poor. Dr. Taylor concluded by diagnosing Dobbins with mood disorder secondary to his medical problems, but added that his prognosis for improvement appears to be fairly good. (Tr. 421-425). This assessment, while not entirely inconsistent with Dr. Garner's opinion, is dissimilar in that it

---

[5] Organomegaly is the abnormal enlargement of an organ. Stedman's Medical Dictionary 1274 (27th ed. 2000).

is based on a formal mental status examination as opposed to Dr. Garner's questionnaire which states no basis and includes no information on Dr. Garner's qualifications to make a mental evaluation.

A review of the ALJ's opinion in conjunction with the evidence on record reveals no error in affording little weight to Dr. Garner's impairment questionnaire. The ALJ thoroughly explained his reasons for affording less weight to Dr. Garner's opinion. Further, the ALJ's findings and determinations are consistent with the evidence on record. Even still, the ALJ acknowledged reviewing the medical records of Drs. Byrd, Patel, and Taylor—other examining physicians whose findings contradict Dr. Garner's opinion. *See Qualls*, 339 F. App'x at 467 (analysis of the § 404.1527(c)(2) factors is unnecessary when confronted with competing opinions from examining physicians).

### B. The Appeals Council did not improperly deny review in Dobbins's case.

Dobbins alleges that the Appeals Council erroneously failed to consider new evidence submitted by Dr. George Foelker, Jr., an examining psychologist, because the evidence was determined to be irrelevant to the time period before the ALJ's decision. (Doc. 22, p. 6). Specifically, Dobbins argues that Dr. Foelker's diagnoses, medical findings, and limitations were new evidence that was material to the Appeals Council's review and, thus, should have been considered. (Doc. 22, p. 8-9).

"New evidence may be grounds for remand if it is material." *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003). "Evidence is 'material' if: (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination." *Moore v. Astrue*, No. 3-07-CV-2017B, 2009 WL 5386134, at *3 (N.D. Tex. Nov. 13, 2009), *adopted by*, 2010 WL 165992

(N.D. Tex. Jan. 13, 2010). "If new evidence is presented while the case is pending review by the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are still supported by substantial evidence." *Moore*, 2009 WL 5386134, at *3 (citing *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82, 2006 WL 166284 at *2 (5th Cir. 2006)).

On April 9, 2012, after the ALJ's unfavorable decision, Dr. Foelker examined Dobbins and opined that he had recurrent and profound Major Depressive Disorder and Anxiety Disorder, not otherwise specified with generalized and agoraphobic features. (Doc. 22-1, p. 6). Dr. Foelker added that Dobbins suffers with suicidal ideation and is demoralized, distressed, despondent, hyper-somnolent; socially withdrawn and avoidant; with a severe loss of appetite and weight; and a loss of virtually all interests and activities. (Doc. 22, p. 2-6). Dr. Foelker did utilize several psychological assessments such as the Stroop test, the WAIS-IV test, and the Beck Depression Inventory to arrive at his diagnosis. Still, Dr. Foelker's diagnosis starkly contradicts Dr. Taylor's previously detailed findings and Dr. Leela Reddy's psychiatric review technique conducted on November 16, 2010. (Tr. 421-425; 434-446). For instance, Dr. Reddy—reviewing Dr. Taylor's records—found that Dobbins had a mood disorder secondary to his medical problems, but that his mental impairment was not severe. Dr. Reddy identified only mild limitations related to Dobbins's activities of daily living; maintaining social functioning; and maintaining concentration, persistence, and pace. (Tr. 444).

Dobbins writes, "Plaintiff acknowledges that Dr. Foelker's opinion was authored after the ALJ's decision, but there can be little debate that the impairments and symptoms opined therein existed during *at least some portion* of the relevant time period." (Doc. 22, p. 11) (emphasis in original). The Court disagrees. Dr. Foelker's psychological assessment report, dated

April 9, 2012, is new evidence in that it was completed after the ALJ's decision, but it is immaterial because it is not relevant to the time prior to the ALJ's decision. *See Moore*, 2009 WL 5386134, at *3. Dr. Foelker's report makes only a conclusory remark that Dobbin's Anxiety Disorder "preceded his first full depressive episode," which Dobbins reported occurred at age 19 or 20. (Doc. 22-1, p. 5). This appears to be Dr. Foelker's only reference to the relevant time frame for his diagnosis of Dobbins's mental impairments and, even still, it appears to be based solely on Dobbins's subjective complaints. (Doc. 22-1, p. 5). Moreover, Dr. Foelker's report is inconsistent with the findings from Dr. Taylor's examination and Dr. Reddy's concurrence during the relevant time period.

The ALJ included mood disorder and generalized anxiety disorder in Dobbins's severe impairments, but based on the medical evidence relevant to his evaluation, he concluded that Dobbins's mental impairments were not disabling. (Tr. 104, 106). Despite Dr. Foelker's contention that Dobbins now has Major Depressive Disorder and Anxiety Disorder, "remand is not appropriate 'solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition.'" *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 238 (5th Cir. 2015) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)). The Appeals Council correctly characterized Dr. Foelker's report as immaterial because Dobbins did not establish that it related to the time between his alleged onset of disability and the ALJ's decision. The Appeals Council advised Dobbins that he could file a new claim based on Dr. Foelker's report and they returned the report to him in case he chose to do so. (Tr. 72).

The Court has reviewed the record as a whole, including Dr. Foelker's report, and determined that the Commissioner's decision is still supported by substantial evidence. *See*

*Higginbotham,* 163 F. App'x at 281-82; *see also Jones v. Astrue,* 228 F. App'x 403, 407 (5th Cir. 2007).

### C. The ALJ did not err when assessing Dobbins's RFC.

Finally, Dobbins alleges that the ALJ erred by not conducting a function-by-function analysis of Dobbins's impairments and by failing to mention his moderate social limitations in the RFC. (Doc. 22, p. 19-20). The Commissioner responds that the ALJ conducted a proper RFC analysis and that the ALJ did account for Dobbins's non-exertional limitations. (Doc. 23, p. 13-14). As noted, the ALJ found Dobbins capable of performing the full range of sedentary work, but precluded Dobbins from working jobs that have production line stress. (Tr. 107).

Regarding the RFC assessment, SSR 96-8p requires an ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." WL 374184, * at 7. Also, the ALJ is required to discuss the claimant's symptoms and the medical source opinions in the record. *Id.* Here, the ALJ proceeded through the sequential evaluation and determined that Dobbins had not worked since his alleged onset of disability, that Dobbins had a number of severe impairments, that none of the impairments equaled the severity level in the listings, that Dobbins could perform the full range of sedentary work with a non-exertional limitation, that he could not perform his past relevant work, and that there were at least two jobs that he could perform that existed in significant numbers in the national economy. (Tr. 98-107). The ALJ thoroughly discussed each of these areas including Dobbins's symptoms and the medical opinions. Accordingly, the Court finds that the ALJ properly discussed his RFC assessment. *See* SSR 96-8p.

Next, Dobbins complains that the ALJ failed to include his own finding of moderate social limitation into Dobbins's RFC. As part of his findings, the ALJ did remark that Dobbins "has a moderate degree of difficulty in his ability to maintain social functioning and a mild degree of difficulty in his ability to maintain concentration, persistence, and pace." (Tr. 107). Also, the only non-exertional limitation that the ALJ placed on Dobbins was the need to be free of production line stress. (Tr. 107). In the Social Security context, "moderately limited" means that "evidence supports the conclusion that the individual's capacity to perform the activity is impaired."[6] By comparison, "not significantly limited" means that "the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity," and "markedly limited" suggests that "the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity."[7] In other words, "moderately limited" means that a person can perform the activity, but with some limitations.[8] By definition, "moderately limited" falls somewhere in between no limitations and wholly unable to perform the activity.[9]

In Dobbins's case, the ALJ recognized a moderate social limitation based on Dobbins's anxiety and accounted for it by limiting his stress to exclude production line jobs. (Tr. 105, 107). The ALJ properly acknowledged that Dobbins's ability to perform sedentary work was impaired, but not wholly precluded.[10] As such, the ALJ applied the proper legal standard when assessing Dobbins's RFC and his decision is supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

---

[6] *See Program Operation Manual System* (POMS) DI 24510.063 Completion of Section I of SSA-4734-F4-SUP, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510063.
[7] *Id.*
[8] *See id.*
[9] *Id.*
[10] *See id.*

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated February 25, 2016.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE